PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KRISTEN DEWITT, *etc.*, | ) | |
| | ) | CASE NO.  5:22CV0476 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| GERVASI VINEYARD & ITALIAN | ) | |
| BISTRO, LLC, *et al.*, | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | [Resolving ECF No. 23] |

Pending is Defendants' Motion for Sanctions for Violation of Court-Authorized Notice

Procedure (ECF No. 23).  Defendants Gervasi 1700, LLC and Gervasi Vineyard & Italian Bistro,

LLC (hereinafter "Defendants") move the Court to exercise its inherent authority to impose

sanctions, including dismissal of the above-entitled FLSA collective action for violation of the

Court's Order (ECF No. 19), entered on October 7, 2022.  In the alternative, Defendants request

that the Court decertify the putative class – allowing the case to proceed solely with the plaintiffs

who joined prior to the coercive email notifications.[1]  In addition, Defendants ask the Court to

---

[1]  Only Plaintiff Kristen DeWitt and four others (Nathaniel Jackson, Danessa Alexander, Shannon Ruth, and Brooke Steiner) joined prior to the improper notifications that began on November 17, 2022.  On November 28, 2022, Plaintiffs' Counsel submitted 28 Consent Forms to become Party Plaintiffs in the collective action.  *See* Notice of Filing Consent Forms (ECF No. 25).  Between November 30, 2022 and January 3, 2023, Plaintiffs' Counsel submitted six more Consent Forms to become Party Plaintiffs.  *See* Notices of Filing Consent Forms (ECF Nos. 28-33).

(5:22CV0476)

order Plaintiffs' Counsel to reimburse them for their reasonable attorney's fees incurred as a

result of the improper communications with the putative class. The Court has been advised,

having reviewed the record, the parties' briefs, and the applicable law. For the reasons that

follow, the Court grants the alternative prong of the motion and will award attorney's fees to

Defendants.

**I.**

"The Court may facilitate notice to the putative class 'so long as the court avoids

communicating to absent class members any encouragement to join the suit or any approval of

the suit on its merits.' " *Bradford v. Team Pizza, Inc.*, No. 1:20-cv-60, 2020 WL 3496150, *6

(S.D. Ohio June 29, 2020) (quoting *Swigart v. Fifth Third Bank*, 276 F.R.D. 210, 214 (S.D. Ohio

2011)). The parties carefully negotiated language to accomplish this purpose. *See* Joint

Stipulation to Conditional Certification (ECF No. 16). Paragraph 5 of the Joint Stipulation

provides, in relevant part: "Counsel for the Parties *shall not contact any of the potential opt-in

plaintiffs* in the Putative Collective Notice Class for the purpose of discussing their participation

in this lawsuit through the end of the opt-in period, except only that either party may respond to

inquiries initiated from potential opt-in plaintiffs in the Putative Collective Notice Class during

this time. . . ." ECF No. 16 at PageID #: 149. Thereafter, the Court conditionally certified the

case at bar as a putative collective action, issued rulings on disputed language in the notice, and

directed that the notice be sent by ordinary mail, email messages, and text messaging. *See* Order

(ECF No. 19). The proposed Notice to Potential Collective Action Members (ECF No. 17-1)

was adopted by the Court with the changes set forth in ECF No. 19. The notice that would be

2

(5:22CV0476)

sent, therefore, accurately communicated the existence of the action, the position of the parties, and the rights of the putative class members to consider and decide whether they wanted to participate.

The parties negotiated – and the Court approved – the following language in the IMPORTANT NOTICE TO POTENTIAL COLLECTIVE ACTION MEMBERS:  "This Notice informs you of a collective action that has been filed under the Fair Labor Standards Act ("FLSA"), advises you of your rights as a potential collective action member, and tells you how you can be included in the action.  If you wish to be included in this collective action, you must sign and return the enclosed Consent Form as explained below."  ECF No. 17-1 at PageID #: 161, ¶ 1.  "You can return the Consent Form by . . . signing it electronically through Adobe Esign."  ECF No. 17-1 at PageID #: 161, ¶ 4.  In addition, once the Court determined that text message notification was appropriate, *see* ECF No. 19 at PageID #: 172, the parties negotiated the following neutral language to be used in the body of the text message to be sent to the putative class members:

> This message is to inform you of a Fair Labor Standards Act collective action filed against Gervasi Vineyard & Italian Bistro on behalf of current and former servers employed at The Bistro or The Crush House between October 7, 2019 and February 28, 2022.  The U.S. District Court for the N.D. of Ohio has authorized this Notice.  Please click the link below to read the Notice and review the included Consent Form.  For questions and/or to provide an updated mailing address, call The Lazzaro Law Firm at 216-696-5000.

The text message was linked to the Adobe© eSign document.  Sample Notice of Text Message Notification (ECF No. 27-1).

3

(5:22CV0476)

**A.**

On Thursday, November 17, 2022, Plaintiffs' Counsel Anthony Lazzaro forwarded the

court-approved Notice to the putative class in an email message generated through Adobe©

eSign and titled "Signature requested on 'Gervasi Vineyard Notice and Consent (eSign).' "[2]  The

title of the email did not merely inform the putative class of the collective action, their right to

participate, and how to opt-in if desired, but rather encouraged them to join by requesting their

signature:



*See also* ECF No. 23-2 at PageID #: 209-10.  The parties, however, negotiated – and the Court

approved – "IMPORTANT NOTICE TO POTENTIAL COLLECTIVE ACTION MEMBERS"

as the title of the document.  Plaintiffs' Counsel offers no reason to deviate from the agreed-upon

title in the email message.

---

[2]  All but one member of the putative class has an email address.

(5:22CV0476)

The body of the email message states:



The body of the email indicates that the sender is requesting the putative class member to sign. The sender is listed as "Anthony Lazzaro," but nowhere in the body of the email does it disclose who Anthony Lazzaro is, who he represents, or why he is requesting the putative class member's signature.

Instead of simply linking to the Notice (ECF No. 17-1) with the changes set forth in ECF No. 19, the radio button that the putative class member must click again to access the document instructs the current or former employee to review and sign:

5

(5:22CV0476)



Rather than use the neutral language in the first section of the Notice titled "Purpose of This Notice" (ECF No. 17-1 at PageID #: 161) or the language for the text message agreed-upon by counsel to explain exactly what the email and Consent Form are, the body of the message again repeats the request from Plaintiffs' Counsel to sign the Consent Form, once more improperly encouraging the putative plaintiffs to join the lawsuit:

Please review and complete Gervasi Vineyard Notice and Consent (eSign).

ANTHONY LAZZARO
esign@lazzarolawfirm.com

(5:22CV0476)

Finally, the email assumed that the putative class members would do as instructed and execute the Consent Form. The email informed them they would all receive a copy once they complied:

After you sign **Gervasi Vineyard Notice and Consent (eSign)**, all parties will receive a final PDF copy by email.

Therefore, there are no less that four requests in the initial email message for a putative class member to sign the Consent Form.

According to Plaintiffs, "[w]hen it came time to send the email notifications via Adobe, Plaintiffs' Counsel's only conduct was to name the document to be reviewed, 'Gervasi Vineyard Notice and Consent' and input the email addresses. Any of the language which Defendant[s] allege[ ] is in violation of the Court's Order or non-neutral, was not created by Plaintiffs' Counsel." ECF No. 26 at PageID #: 252. Plaintiffs' Counsel declares this "is the default language" in Adobe© eSign. "That program includes default content and settings that were not dictated by Plaintiffs' Counsel. . . . When completing the process to send out the eSign requests, the only parts of the email that can be changed are the name of the form to be signed and the body of the email where it states 'please review and complete.' " ECF No. 26 at PageID #: 249. Even the two customizations admittedly made by Plaintiffs' Counsel were misleading, not

7

(5:22CV0476)

neutral, and inconsistent with the Court's approved notice process.  The proposed Notice to

Potential Collective Action Members (ECF No. 17-1) was adopted by the Court with the changes

set forth in ECF No. 19.  Plaintiffs' Counsel were not permitted to ignore the language stipulated

to by the parties and approved by the Court.  Having done so, Plaintiffs' Counsel certainly were

not permitted to insert in the body of the email message their own instruction to the putative class

members to "Please review and complete Gervasi Vineyard Notice and Consent."

Indeed, the way Plaintiffs' counsel titled the initial email message, a reader could

reasonably infer it was Defendants requesting the signature.  One of their employees, Bradley

Preston, stated that he believed the document was actually sent by Gervasi and that the signature

would be " 'for' Gervasi and not 'against' Gervasi."  Declaration of Scott Swaldo (ECF No. 23-

2) at PageID #: 208, ¶ 10.  Mr. Preston also described the reminder email discussed below as

"aggressive."  ECF No. 23-2 at PageID #: 208, ¶ 10.

It was also possible to send a custom, neutral notice using Adobe© eSign.  According to

Defendants, Plaintiffs' Counsel could have – in less than one minute and at no cost– generated a

neutral electronic mail notice linking to an Adobe© eSign document in compliance with the

Court's approved process, using the agreed-upon language for both the title and body of the

email communication.  *See* Reply Memorandum (ECF No. 27) at PageID #: 258-59, 260 n. 7;

Sample Notice Generated by Defense Counsel for Demonstrative Purposes (ECF No. 27-2).[3]

---

[3]  In addition, Plaintiffs' Counsel also links to such eSign Consent Forms on their
website for other conditionally certified FLSA collective actions in the Northern District
of Ohio.  The Court notes that in *Tallman v. Crown Battery*, No. 3:20CV2712 (N.D. Ohio
filed Dec. 4, 2020), Plaintiffs' counsel selected the neutral title "Notice to Potential Class
(continued...)

(5:22CV0476)

It was also possible to completely customize the boilerplate notices if Plaintiff's Counsel desired to send notices in that manner.  Adobe© calls this process "custom email templates" or "CEMT," and notes that CEMTs may be useful in situations when, for example, "the Legal group may want to have a very different vibe" than other communications sent on behalf of a company. https://helpx.adobe.com/sign/using/custom-email-templates.html (last visited Jan. 25, 2023). There are, however, additional steps and a cost involved in the creation of a CEMT.  Custom email templates allow the sender to fully change the color scheme, images, text, page layout, terminology used, and inserted images. https://helpx.adobe.com/sign/using/custom-email-templates.html (last visited Jan. 25, 2023).

**B.**

On Friday, November 18, 2022, Plaintiffs' Counsel Anthony Lazzaro sent the putative class yet another email communication "reminding" them to execute the Consent Form:



---

[3](...continued)
Members."  *See* https://www.lazzarolawfirm.com/2008/03/active_entries.php (last visited Jan. 25, 2023).

(5:22CV0476)

*See also* ECF No. 23-2 at PageID #: 211. Plaintiffs' Counsel assert the reminder notices "were

not intentionally set" by them and inexplicably claim they "did not violate any order or

agreement in this case." Plaintiffs' Memorandum in Opposition (ECF No. 26) at PageID #: 248-

49. "When the email notifications were being created in Adobe eSign, the option to include a

'reminder notice' was activated in error. . . [and] should not have been done in this case." ECF

No. 26 at PageID #: 250.

In the body of the reminder email, Plaintiffs' Counsel twice more requests the employees'

signature on the Consent Form.



The email warned that the recipient would receive a reminder every day until the recipient

complied by signing the Consent Form or actively turned off the reminder notifications:

(5:22CV0476)

> Anthony Lazzaro has requested that this reminder be sent. This reminder will be re-sent every day until completed. Click here if you wish to stop receiving reminders about this agreement.

The reminder email also conveyed the assumption that the employee would sign the Consent Form as requested:

> After you sign Gervasi Vineyard Notice and Consent (eSign), all parties will receive a final PDF copy by email.

According to Plaintiffs, "none of the content of the reminder notice was set by Plaintiffs' Counsel.  The subject line, body of the reminder email, notice regarding frequency of the reminder, and notice that all parties will receive a notice once the document is signed, are all dictated by Adobe eSign and not generated by Plaintiffs' Counsel." ECF No. 26 at PageID #: 252-53.

Defense Counsel learned of the content of the email messages on Friday, November 18, 2022.  Counsel conferred by telephone later that afternoon, and Plaintiffs' Counsel Robert

(5:22CV0476)

Kapitan promised that his firm would turn off the improper reminder emails for each of the putative class members. No further reminder notices were sent. At that time, the text message notifications had not yet been sent to the putative class, seemingly due to some technological problem with a program called TextMagic. Counsel agreed to discuss the matter further on Monday, November 21, 2022, and to delay the text notification until then. The conversation was confirmed via email between counsel: "This will confirm our conversation that you have shut off the reminder email so that putative plaintiffs do not receive a third email notice from your office, that you will not send the text notice before Monday, and that we will speak again on Monday with our proposal regarding these notices." ECF No. 23-3.

Early on the morning of Monday, November 21, 2022, Plaintiffs' Counsel indicated via email "[t]he text notifications will go out later today," and offered to "be available later this afternoon" to discuss. ECF No. 23-4. Defendants immediately objected via email to the text messages being sent to those putative class members who had already received multiple notifications, and requested that the texts be limited to "only those individuals who have not already received multiple email communications." ECF No. 23-5. Defense Counsel requested the opportunity to seek guidance from the Court if Plaintiffs' Counsel was unwilling to agree. *See* ECF No. 23-5. According to Defendants, Plaintiffs' Counsel did not respond to the email, and rather than waiting to discuss the issue later that afternoon or allow Defense Counsel to bring the matter to the attention of the Court, Plaintiffs' Counsel issued the text notifications to the entire class. Thus, Defendants were precluded from seeking guidance from the Court regarding

12

(5:22CV0476)

whether text notifications should be sent to class members who had already received two notices from Plaintiffs' Counsel.

## II.

## A.

The Court has "broad authority to exercise control over the collective action and to govern the conduct of counsel and parties in the collective action." *Billingsley v. Citi Trends, Inc.*, 560 Fed.Appx. 914, 921 (11th Cir. 2014) (quotation marks omitted).  The United States Supreme Court has made clear that a district court has a managerial responsibility to oversee the process by which putative class members are given notice of, and allowed to join, a collective action. *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989).  It emphasized the need for "scrupulous" attention to the neutrality of any notice communications with the putative class:

> Court intervention in the notice process for case management purposes is distinguishable in form and function from the solicitation of claims.  In exercising the discretionary authority to oversee the notice-giving process, courts must be *scrupulous to respect judicial neutrality*.  To that end, trial courts must take care to *avoid even the appearance of judicial endorsement of the merits of the action*.

*Id.* at 174 (emphasis added).  The Court notes that "because of the potential for abuse, the court must be careful to guard against 'the stirring up of litigation through unwarranted solicitation.' " *Lacy v. Reddy Elec. Co.*, No. 3:11-cv-52, 2011 WL 6149842, at *2 (S.D. Ohio Dec. 9, 2011) (quoting *Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264, 266-67 (D.Minn. 1991) (internal quotation marks omitted)).

Courts have the inherent power to sanction litigants for conduct that constitutes an abuse of the judicial process. *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246

13

(5:22CV0476)

(1944), *overruled on other grounds*, *Standard Oil Co. v. United States*, 429 U.S. 17, 18, 97 (1976); *see also Jones v. Continental Corp.*, 789 F.2d 1225, 1229 (6th Cir. 1986) (courts have the inherent power to punish with sanctions those who litigate in bad faith).  "These powers come not from rule or statute but from 'the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.' " *Stalley v. Methodist Healthcare*, 517 F.3d 911, 920 (6th Cir. 2008) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)). "Even if there [are] available sanctions under statutes or various rules in the Federal Rules of Civil Procedure . . . the inherent authority of the Court is an independent basis for sanctioning bad faith conduct in litigation." *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 511 (6th Cir. 2002) (footnote omitted).  "A district court may impose sanctions pursuant to its inherent authority 'to control the litigants before it and to guarantee the integrity of the court and its proceedings.' " *Holmes v. U.S. Bank*, No. 1:07-CV-695, 2009 WL 1542786, at *6 (S.D. Ohio May 28, 2009) (quoting *First Bank of Marietta*, 307 F.3d at 512).  Courts may use their inherent authority to sanction a party who has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons" or who has engaged in conduct that was "tantamount to bad faith." *Laukus v. Rio Brands, Inc.*, 292 F.R.D. 485, 502-03 (N.D. Ohio 2013) (quoting *Metz v. Unizan Bank*, 655 F.3d 485, 489 (6th Cir. 2011)).  A court may even dismiss a case in its entirety if warranted by a "plaintiff's bad faith, fraudulent conduct, and abuse of the judicial process." *Jones v. Bergh*, No. 2:08-cv-128, 2011 WL 5180569, at *2 (W.D. Mich. Oct. 31, 2011); *see also Clemons v. DeWine*, No. 19-3033, 2019 WL 7567197, at *3 (6th Cir. May 1,

14

(5:22CV0476)

2019).  The sanctionable conduct here occurred during a court-supervised notice process – a stage especially subject to the inherent authority of the Court.

The central issue presented by the within motion is whether the email message sent by Plaintiffs' Counsel through Adobe© eSign was disseminated in a strictly neutral manner that did not encourage putative class members to join the lawsuit.  Defendants argue the electronic mail notices are highly prejudicial and improper and encourage the putative class members to join the suit contrary to federal law and the notice procedure approved by the Court.  According to Defendants, Plaintiffs' Counsel configured the notice to send daily reminder notices to every potential opt-in plaintiff which were not authorized by the Court and were directly prohibited by the stipulated procedure approved by the Court which forbid counsel to communicate with the putative class members during the opt-in period.  The Court agrees.

While the parties and the Court carefully negotiated and drafted specific language to be used in the notices to be sent to the putative class, Plaintiffs' Counsel instead included improper cover letter communications for the electronic notices that were blatantly designed to encourage putative class members to join the suit and engaged in repeated contact with the putative class through reminder emails that directly violate the Court's Order (ECF No. 19).

Instead of providing the approved neutral notice language required by the Court, Plaintiffs' Counsel sent two email communications that directly requested the putative plaintiffs to sign the Consent Form seven separate times.  Plaintiffs' Counsel effectively cloaked their improper direct solicitation in the authority of the Court by utilizing the Court-approved notice in

15

(5:22CV0476)

conjunction with their email messages generated through Adobe© eSign, which repeatedly

implored the current and former employees to join the collective action.

Defendants move the Court to exercise its inherent authority to impose sanctions,

including dismissal of the collective action.  In the alternative, Defendants request that the Court

decertify the conditionally certified putative class – allowing the case to proceed solely with the

five plaintiffs who joined prior to the coercive notifications.  *See* *Sandoval v. Serco, Inc.*, No.

4:18-CV-0562 JAR, 2019 WL 2075910, at *7 (E.D. Mo. May 10, 2019) (granting in part

defendant's motion for sanctions insofar as it sought to strike all consent to join forms filed to

date and dismiss those opt-in plaintiffs without prejudice).  Defendants also request that

Plaintiffs' law firm be disqualified from representing the 34 individuals who were improperly

solicited.  Other courts have imposed sanctions for improper solicitation of FLSA putative class

members by ordering that the firm could not represent, and could not recover any attorney's fees

or costs, for any individual who was improperly solicited.  *Hamm v. TBC Corp.*, 345 Fed.Appx.

406, 409 (11th Cir. 2009).

**B.**

Paragraph 5 of the Joint Stipulation to Conditional Certification provides, in relevant

part:  "Counsel for the Parties *shall not contact any of the potential opt-in plaintiffs* in the

Putative Collective Notice Class for the purpose of discussing their participation in this lawsuit

through the end of the opt-in period, except only that either party may respond to inquiries

initiated from potential opt-in plaintiffs in the Putative Collective Notice Class during this

time. . . ."  ECF No. 16 at PageID #: 149.  The Court approved the parties' Joint Stipulation, at

16

(5:22CV0476)

which time it became an Order of the Court.  *See* ECF No. 19 at PageID #: 175.  But, Plaintiffs'

Counsel configured the Adobe© eSign email notice to send daily reminders to the putative class

until they signed the Consent Form ("Reminder:  Waiting for you to sign Gervasi Vineyard

Notice and Consent (eSign). . . .  This reminder will be re-sent every day until completed. . . .")

*See* ECF No. 23-2 at PageID #: 211.  The reminder email was an improper solicitation of every

member of the putative class and a violation of the Court's Order (ECF No. 19) and the

agreed-upon notice procedure (ECF No. 16).

The Adobe© DocuSign reminder is a feature that must be affirmatively selected by the

sender, either through configuring the request when sending or through affirmatively changing

the account settings.  According to Adobe©, the "sender only has to define the iteration that the

reminder will trigger."  There are six options:  every day, every week, every business day, every

other day, every third day, and every fifth day.  Plaintiffs' counsel selected the most aggressive

option available:  every day.  *See* https://helpx.adobe.com/sign/using/set-reminders.html (last

visited Jan. 25, 2023).  The improper reminder emails encouraging the putative class members to

opt-in to the litigation was only turned off after Defense counsel discovered the email notice on

Friday, November 18, 2022.

**III.**

For the reasons stated above, the Court finds that Plaintiffs' Counsel did not generate an

email notice to the putative class members that was neutral and did not encourage participation in

the collective action.  Accordingly, the Court grants the alternative prong of Defendants' Motion

for Sanctions for Violation of Court-Authorized Notice Procedure (ECF No. 23) and will award

(5:22CV0476)

Defendants attorney's fees and costs incurred in bringing and prosecuting the within motion.  To

remedy the prejudice suffered by Defendants, the Court decertifies the conditionally certified

putative class.  The case shall proceed solely with Plaintiff Kristen DeWitt and opt-in Plaintiffs

Nathaniel Jackson, Danessa Alexander, Shannon Ruth, and Brooke Steiner – the current or

former employees who joined the collective action as plaintiffs prior to the improper

notifications.  The other 34 opt-in Plaintiffs are dismissed without prejudice.  They will have the

right to initiate their own action should they choose to do so.  But, The Lazzaro Law Firm, LLC

cannot represent them, and cannot recover any fees or costs, for representing them in the present

case.

The Court will determine the amount of reasonable attorney's fees and costs that

Defendants are entitled to, pursuant to the Court's inherent authority, following the submission

of an affidavit(s) by Defendants within 30 days of the date of this Memorandum of Opinion and

Order setting forth their attorney's fees and costs.  If Plaintiffs' Counsel objects to the number of

hours expended in bringing and prosecuting the within motion, within 30 days after service of the

affidavit, they shall provide a detailed, specific explanation of why a particular item of services

rendered was not reasonably expended.  The explanation must include a comprehensive

presentation of all factual grounds and legal analysis in a non-conclusory fashion.


IT IS SO ORDERED.


  January 25, 2023          */s/ Benita Y. Pearson*
Date                         Benita Y. Pearson
                             United States District Judge

18